IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AIMEE CATHERINE LAMOREAUX,<br><br>Plaintiff,<br><br>vs.<br><br>KALISPELL POLICE DEPARTMENT,<br><br>Defendant. | CV 16-89-M-DLC-JCL<br><br>ORDER, and FINDINGS<br>AND RECOMMENDATION |

**I.** **Introduction**

Plaintiff Aimee Lamoreaux, appearing pro se, filed a motion requesting leave to proceed in forma pauperis. She submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Because it appears she lacks sufficient funds to prosecute this action IT IS HEREBY ORDERED that Lamoreaux's motion is GRANTED. This action may proceed without prepayment of the filing fee, and the Clerk of Court is directed to file Lamoreaux's lodged Complaint as of the filing date of her request to proceed in forma pauperis.

The federal statute under which leave to proceed in forma pauperis is permitted — 28 U.S.C. § 1915 — also requires the Court to conduct a preliminary screening of the allegations set forth in the litigant's pleading. The applicable

1

provisions of section 1915(e)(2) state as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that–
>
> > (A) the allegation of poverty is untrue; or
> >
> > (B) the action or appeal–
> >
> > > (i) is frivolous or malicious;
> > >
> > > (ii) fails to state a claim on which relief may be granted; or
> > >
> > > (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

The Court will review Lamoreaux's pleading to consider whether this action can survive dismissal under the provisions of section 1915(e)(2), or any other provision of law. *See Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1138, 1142 (9th Cir. 2005).

## II. **Background**

On July 2, 2015, an unexplained "standoff" occurred at Lamoreaux's home in Kalispell, Montana. She complains that at the time of the standoff police officers from the Kalispell Police Department seized a gun, ammunition, magazines and other items from her home. Lamoreaux commenced this action requesting the Court order the Kalispell Police Department to return the gun and

2

other personal property items to her.

After the standoff Lamoreaux was the subject of civil commitment proceedings in the Montana Eleventh Judicial District Court, Flathead County, under the caption *In the Matter of the Mental Health of: Aimee Lamoreaux*, Cause No. DI-15-040(D). In her complaint Lamoreaux refers to pleadings filed in her civil commitment case, and she attached those pleadings to her complaint. The pleadings reflect that a deputy Flathead County Attorney filed a petition for involuntary commitment against Lamoreaux on July 2, 2015, the same day as the standoff. As a result, and based on Lamoreaux's then-existing mental health condition, the state court committed her to a community-based mental health treatment program for 90 days. (Doc. 1-1 at 4 of 6.)[1]

Following Lamoreaux's 90-day commitment, the issue of Lamoreaux's claim for the return of her gun and other seized property items arose in her civil commitment proceedings. But by Supplemental Order entered June 14, 2016, the state court, District Judge David M. Ortley presiding, concluded it could not

---

[1] A court may properly consider documents attached to, and incorporated by reference in, the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). And a court may take judicial notice of other state or federal court proceedings. *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). *See also Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (allowing judicial notice of pleadings in other cases).

resolve the issue of whether she is entitled to the return of her gun and the other items within the context of Lamoreaux's civil commitment proceedings. (Doc. 1-1 at 6 of 6.) Instead, Judge Ortley noted that Lamoreaux's procedural remedy for securing the return of evidence/personal property was available to her under Montana law at Mont. Code Ann. § 46-5-312.

Apparently in response to Judge Ortley's referenced June 14, 2016 Supplemental Order, on July 12, 2016, Lamoreaux commenced this action seeking the return of her gun. As the apparent grounds for federal question jurisdiction, Lamoreaux cites to, without supporting facts or argument, the Second Amendment to the United States Constitution, the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.*, and the Brady Handgun Violence Prevention Act which amended the Gun Control Act in 1993. *See Printz v. United States*, 521 U.S. 898, 902 (1997). Lamoreaux notes the referenced federal law prohibits a person "who has been adjudicated as a mental defective or who has been committed to a mental institution" from possessing a firearm. 18 U.S.C. § 922(g)(4).

The balance of Lamoreaux's allegations quote several passages of Judge Ortley's orders issued in her civil commitment case suggesting Lamoreaux potentially could recover possession of her gun if she pursued other available procedures. Lamoreaux complains that the Kalispell Police Department refuses to

return the gun to her despite Judge Ortley's orders which she construes as authorizing her to possess her gun. Specifically, she emphasizes that Judge Ortley stated her "civil and legal rights under Montana law were automatically restored upon termination of the 90 day commitment." (Doc. 1-1 at 4 of 6.) Therefore, she alleges the Kalispell Police Department is unlawfully retaining possession of her gun, and she requests this Court order the Kalispell Police Department to return her gun and other personal property items to her.

### III. DISCUSSION

Because Lamoreaux is proceeding pro se the Court must construe her pleading liberally, and the pleading is held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Although the Court has authority to dismiss a defective pleading pursuant to 28 U.S.C. § 1915(e)(2),

> a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Liberally construed, Lamoreaux's allegations assert the Kalispell Police Department personnel have violated her right to the possession of her personal

5

property items as protected by either federal statutory law or the United States Constitution as referenced in her pleading. Therefore, her claims are cognizable under 42 U.S.C. § 1983. Section 1983 permits claims under federal law against a local governmental entity, or a state official or employee, if the plaintiff can establish that the defendant was (1) acting under color of state law, and (2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Although Lamoreaux references the Second Amendment in her complaint, her allegations present no facts which assert that the circumstances of her situation actually violate her rights under the Second Amendment. Instead, Lamoreaux's allegations, in substance, contend that due to a change in her circumstances she is now eligible to regain possession of her gun.

Specifically, Lamoreaux recognizes that under federal law individuals with mental defects or committed to a mental institution are prohibited from possessing a firearm. *See* 18 U.S.C. § 922(g)(4). Her allegations and the court documents attached to her complaint establish that in the course of her civil commitment proceedings the state court found she had a "mental disorder," and that she posed a "threat to herself and others," all of which led to her commitment for mental health treatment for 90 days. (Doc. 1-1 at 4 of 6.) Lamoreaux's allegations suggest that

her civil commitment circumstances, together with the provisions of section 922(g)(4), have previously precluded her from obtaining possession of her gun.

But Lamoreaux suggests the provisions of 18 U.S.C. § 922(g)(4) no longer apply to her. She contends Judge Ortley's order confirms her rights were restored following her 90-day civil commitment and, therefore, she is entitled to the return of her gun.

Properly construed, the Court finds Lamoreaux's allegations do not assert that section 922(g)(4) violates her Second Amendment rights. And she does not allege that the Kalispell Police Department's conduct violates her Second Amendment rights. Therefore, the Court concludes Lamoreaux has not pled a claim for a violation of her Second Amendment rights.

Instead, liberally construed, Lamoreaux's allegations assert only that the Kalispell Police Department is unlawfully refusing to return her items of personal property to her, i.e. that it has unlawfully deprived her of her property in violation of her due process rights protected under the Fourteenth Amendment to the United States Constitution. But for the reasons discussed, the allegations do not state a viable due process claim.

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of

law[.]" U.S. Const. Amend. XIV, § 1. To succeed on a procedural due process claim, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). Fundamentally, due process affords a person a right to notice and a hearing before the State can deprive the person of life, liberty, or property. *Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990).

In a procedural due process claim, it is not the deprivation of life, liberty or property itself that is unconstitutional. *Zinermon*, 494 U.S. at 125. Rather, the unconstitutional conduct is the deprivation of those interests without due process of law. *Id*. Therefore, the actionable unconstitutional conduct "is not complete unless and until the State fails to provide due process." *Id*. at 126. Thus, a court must consider what process a State provided or must provide, and whether that process was or is constitutionally adequate. *Id*.

Ordinarily, due process law requires that an opportunity for a hearing be made available prior to the deprivation of a significant property interest. *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 19 (1978). But courts also recognize there exist situations where a postdeprivation remedy is sufficient to

8

satisfy due process. *Zinermon*, 494 U.S. at 128. For example, the necessity of quick action by the State in effecting a deprivation may mean that a postdeprivation remedy is constitutionally adequate because it is the only remedy the State can be expected to provide. *Id*. (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)).

> [E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.

*Parratt v. Taylor*, 451 U.S. 527, 539 (1981), overruled on other grounds in *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).[2]

The necessity of quick action can arise where the government has an interest in protecting public health and safety. The Supreme Court recognizes states have "great leeway in adopting summary procedures to protect public health and safety." *Mackey v. Montrym*, 443 U.S. 1, 17 (1979).

In *Mackey*, the Court addressed a Massachusetts law which permitted a law

---

[2]Similarly, other examples include situations where a deprivation is effected by a state employee's random, intentional, and unauthorized conduct. In those situations an adequate postdeprivation remedy may satisfy due process requirements because a predeprivation process is not possible – the postdeprivation process is all the process the State can be expected to provide, and is constitutionally sufficient. *See also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) and *Zinermon v. Burch*, 494 U.S. 113, 115 (1990).

enforcement officer to summarily suspend an individual's driver's license if the individual is arrested for the criminal offense of driving under the influence of alcohol and the individual refused to submit to a chemical test or an analysis of his or her breath for blood alcohol content. The Court recognized the Massachusetts law was enacted in aid of the State's police function in protecting the safety of the people of Massachusetts, and the summary sanction of a suspended driver's license promptly removes drunken drivers from the roads and contributes to the safety of public highways. *Id*. 443 U.S. at 17-18. Under those circumstances quick action is necessary, and a pre-suspension hearing would substantially burden the necessary summary process and undermine the state's interest in public safety. *Id*. at 18.

Significantly, and relevant to Lamoreaux's case, in *Mackey* a post-suspension hearing was available immediately after a driver's license was suspended. *Mackey*, 443 U.S. at 12. Thus, the procedure for the summary suspension of a driver's license did not violate due process, in part, because an adequate post-deprivation remedy was available. *Id*. at 12, 19. *See also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989) (recognizing the necessity for quick action to protect the public interest in the enforcement of pollution laws justified an immediate seizure of property without a

10

prior hearing where a post-deprivation hearing is sufficient to afford due process).

Here, Lamoreaux's allegations indicate the law enforcement officers were present at her residence as a result of what she characterizes as a "standoff." Those allegations necessarily suggest that an issue of either criminal conduct or public health, welfare, and safety occurred which gave rise to the standoff involving law enforcement officers. Under the circumstances as characterized by Lamoreaux's allegations, it would be necessary for the officers to take quick action to seize either weapons, evidence or personal property items related to the standoff without conducting a hearing prior to the seizure and deprivation of the items. A pre-deprivation hearing would substantially burden the necessary summary seizure processes officers would need to employ during a standoff and would undermine the state's interest in public safety.

Furthermore, Montana law makes a procedural remedy available to Lamoreaux for her to request the return of her personal property items. Montana law provides as follows:

> (1) A person claiming the right to possession of property seized as evidence may apply to the judge for its return. The judge shall give written notice as the judge considers adequate to the prosecutor and all persons who have or may have an interest in the property and shall hold a hearing to determine the right to possession.
>
> (2) If the right to possession is established, the judge shall order the property, other than contraband, returned if:

11

> (a) the property is not needed as evidence;
> (b) the property is needed and satisfactory arrangements can be made for its return for subsequent use as evidence; or
> (c) all proceedings in which the property might be required have been completed.

Mont. Code Ann. § 46-5-312.

Under the circumstances alleged by Lamoreaux, the Court finds the remedy available to her under section 46-5-312 is constitutionally adequate to protect her due process rights because it is the only remedy the State can be expected to provide in the circumstances of a standoff involving law enforcement officers and their need to take quick action. The actionable unconstitutional conduct that could violate Lamoreaux's due process rights "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Therefore, based on the availability of the procedure set forth in section 46-5-312, the Court concludes Lamoreaux's allegations fail to state a viable claim for the violation of her due process rights.

## IV.  Conclusion

Based on the foregoing, the Court finds Lamoreaux's complaint fails to state a claim on which relief could be granted. Although a district court should ordinarily grant a pro se plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th

Cir.1995), "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Under the circumstances alleged, and the availability of a remedy to Lamoreaux under Mont. Code Ann. § 46-5-312, the Court finds she could not cure the defects in her due process claim through additional factual allegations. Therefore, the Court recommends Lamoreaux's complaint be DISMISSED.

DATED this 17th day of October, 2016.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge